UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| BRANDON HOLLOWAY | DOCKET NO.: 1:23-cv-1725 |
|---|---|
| VERSUS | |
| | JUDGE DEE D. DRELL |
| PROCTER & GAMBLE MFG. CO. | MAG. JUDGE PEREZ-MONTES |

### MEMORANDUM RULING

Before the court is a motion for summary judgment (Doc. 24) filed by defendant, Procter & Gamble Manufacturing Company ("P&G"), in which it seeks dismissal of all claims against it in the above captioned matter.[1] For the reasons expressed below, the court finds P&G's motion will be **GRANTED**.

**I.     Background**

Brandon Holloway ("Holloway") was hired by P&G in 2007 as a Raw Materials Specialist at its fabric care site in Alexandria, Louisiana. Holloway remained at P&G for the next 17-years serving in several capacities. In 2018, Holloway was promoted to Business Environmental Contact ("BEC"). In this position, Holloway managed the storage and shipment of waste from its onsite storage facilities, coordinated with sub-vendors, supervised the loading of non-hazardous waste, maintained a waste management tracking system, and completed waste manifest forms. At some point prior to his termination, Holloway was reassigned from his position as a BEC, but he continued to load and label waste for transportation off property. On December 6, 2022, Holloway was terminated.

---

[1] P&G did not raise an argument in favor or dismissal of Holloway's retaliation claim in its initial motion for summary judgment. This was noted by Holloway in his opposition. P&G then addressed the issue in its response. Because Holloway was not afforded an opportunity to respond, we requested additional briefing on the issue which the parties provided. (Doc. 29 and 30).

Holloway asserts that P&G's reasons for terminating his employment were fabricated, and he was actually terminated for complaining about the violation of federal and state regulations governing the transportation of waste and being treated less favorably than his non-white comparators. Holloway reported the violations and race discrimination on three separate occasions between the months of September and November 2022 to Will Morgan ("Morgan"), his Health, Safety, and Environmental Manager. According to Holloway, his final complaint was made to Morgan on November 22, 2022 and within two weeks he was terminated.

Thereafter, Holloway learned that a P&G employee was defaming him by telling P&G contractors that Holloway was terminated for taking kickbacks and engaging in theft with other contractors.

Holloway filed a charge for discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 27, 2023.[2] On December 6, 2023, he filed the instant lawsuit, prior to receiving a response from the EEOC. (Doc. 1). On January 24, 2024, Holloway was issued a "Notice of Right to Sue," pursuant to his request for the same. (Doc. 5-1). Holloway then filed an amended complaint on February 1, 2024 (Doc. 5) and a second amended complaint on May 2, 2024 (Doc. 16) setting forth the aforementioned claims.

P&G denies all of Holloway's claims and seeks dismissal of the same. It avers that Holloway never made any reports of alleged federal and/or state violations during his employment. They also take exception to the assertion that P&G violated any federal or state regulations when it ordered Holloway to load and label waste but required Bridget Anders sign forms verifying what waste was being transported. Specifically, P&G argues that the regulation Holloway cites, 49 C.F.R. Part 172, subpart H, does not prohibit such conduct.

---

[2] It is undisputed that Holloway filed a charge with the EEOC, but we have not found a copy of the charge in the record.

2

P&G also denies that Holloway reported disparate treatment. In fact, P&G states that Holloway's termination was based solely on the fact that in November 2022, two separate investigations revealed he had violated P&G's corporate credit card policies and had again violated its Sourcing, Accountability, Fairness, and Ethics policies regarding purchasing ("SAFE purchasing policies"). Holloway was first disciplined in November 2020 for violating the SAFE purchasing policies when he bypassed P&G's procurement department and directly contacted vendors for loading and transportation quotes. Two years later Holloway was found to have violated SAFE purchasing policies again when he reached out to a contractor for a new price and signed off on sub-vendor time sheets without confirming their accuracy. Additionally, Holloway admitted to using his corporate credit card for personal use on two occasions, which was in direct violation of P&G policy. In light of his failure to comply with various corporate policies, P&G terminated Holloway's employment.

Finally, P&G denies defaming or being vicariously liable for any defamation of Holloway.

## II. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

### III. Analysis

<u>Race Discrimination</u>

Holloway's first cause of action is race discrimination. A plaintiff "may prove a claim of intentional discrimination ... either by direct or circumstantial evidence." McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007), abrogated on other grounds by Hamilton v. Dallas Cnty., 79 F.4th 494 (5th Cir. 2023). When a plaintiff offers no direct evidence of intentional race discrimination, his claim is analyzed under the burden shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Id. Under this burden shifting framework, the plaintiff must first establish a *prima facie* case that creates the inference of discrimination. McDonnell Douglas, 411 U.S. at 802. If accomplished, the burden shifts to the defendant to produce evidence establishing the adverse employment action was taken for a legitimate, non-discriminatory reason.

Id. Assuming, such a showing is made, the burden returns to the plaintiff to establish, by a preponderance of the evidence either: (1) the defendant's reason is not its true reason, but is a pretext for discrimination, or (2) while the reason may be true it is but one of the reasons for his/her conduct, another of which is discrimination. Id. at 804-05; Reeves v. Anderson, 530 U.S. 133 (2000); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005); Ross v. Judson Indep. Sch. Dist., 993 F.3d 315, 321 (5th Cir. 2021).

To establish a *prima facie* case, Holloway must show he: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position at issue at the time of his discharge; and (4) was replaced by someone outside of his protected group or treated less favorably than other similarly situated employees outside of his protected group under nearly identical circumstances. McCoy, 492 F.3d at 556 (5th Cir. 2001). Although P&G does not dispute the first two elements are met, it does argue that Holloway cannot carry his burden of showing he was qualified for the position at the time of discharge and that he was terminated or treated less favorably than similarly situated comparators.

P&G argues that Holloway was not qualified for his position at the time of his discharge. In support, it cites Holloway's unauthorized use of his corporate credit card and violation of P&G's SAFE purchasing policies. Whether Holloway was qualified for the job at the time of termination is a question of whether he met the objective qualifications for the job, not whether his conduct was a basis for termination. Accordingly, we find this element satisfied.

To satisfy the fourth element, a plaintiff must show that he was either replaced by someone outside of his race or that a similarly situated comparator and received more favorable treatment. Holloway asserts he was replaced by Basil White, who is black, and P&G does not dispute this assertion. As Holloway was replaced by someone outside of his protected group, he has met the

fourth element and has established a *prima facie* case of race discrimination. Accordingly, we now turn to whether P&G's reason for terminating Holloway was a legitimate, non-discriminatory reason or a pretext for race discrimination.

P&G argues that it terminated Holloway because he misused his corporate credit card and failed to follow its SAFE purchasing policies. In response, Holloway argues that the misuse of his credit card was due to a misunderstanding of the policy, the allegation he failed to follow SAFE purchasing policies was fabricated, and non-white comparators engaged in more egregious conduct but were not terminated. The only evidence in support of his arguments are his own deposition testimony and declaration. There are no witness statement nor any other record evidence supporting his contentions that either the articulated reasons were not actual reasons or that they may have been a reason behind his termination but there were also other discriminatory reasons.

Whether Holloway misunderstood the policy regarding corporate credit card use does not excuse the fact that violated corporate policy. Moreover, Holloway admits that he used his corporate credit card for personal use on two occasions; thus, he violated policy. His disagreement with the allegations that he violated the SAFE purchasing policies is based on his self-serving interpretation of the policies. Holloway asserts excuses for his conduct and attempts to create loopholes in policy, but he fails to provide any evidence to support that his conduct complied with company policy.

Finally, Holloway's argument that he was treated differently than non-white comparators defies common sense. He claims that he reported race discrimination on this basis three times before he was terminated. Yet, when asked during his deposition how he was treated differently, he simply stated that the named comparators engaged in more egregious misconduct but were not

terminated. How could he complain about being treated less harshly to Morgan when Holloway had not yet been terminated? Holloway does not provide any other reason as to how he was treated less favorably, and he admits in his deposition that his assertions about misconduct by others and/or whether they were disciplined is based mostly on speculation.

Without evidence to support his self-serving claims. Holloway cannot carry his burden of proving the reasons articulated by P&G for his termination were a pretext. As such, this claim will be dismissed.

Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee who "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3a. To establish a *prima facie* case of retaliation, Holloway must show that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." Hudson v. Lincare, Inc., 58 F.4th 222, 232 (5th Cir. 2023) (Citations omitted). During his deposition, Holloway stated that between September and November 2022, he told Morgan on three different occasions that he was being treated less favorably than his non-white comparators. Morgan provided sworn declaration in support of P&G's motion for summary judgment claiming Holloway made never reported any complaints of race discrimination to him.[3] In light of our discussion *supra*, the evidence suggests that Morgan's version of events is accurate. However, because questions of fact and reasonable inferences arising from evidence should be resolved in

---

[3] Bridget Anders also stated in her sworn declaration that Holloway never came to her with complaints of race discrimination. (Doc. 24-12).

7

favor of the opposing party, we will take Holloway's assertion as true and find he has established the first element of a *prima facie* case of retaliation.

The second element is satisfied as it is undisputed that Holloway suffered a materially adverse action when he was terminated. Thus, we now turn to whether there is a causal connection between Holloway's protected activity and his termination.

"At the *prima facie* stage, the standard for satisfying the causation element is much less stringent than a 'but for' causation standard." Ackel v. Nat'l Commc'n, Inc., 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted).[4] However, the employee "must produce *some* evidence of a causal link between the protected activity and the adverse employment action." Id. For example, he may rely upon "temporal proximity" between the protected conduct and retaliation. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" Clark v. County School Dist. v. Breeden, 532 U.S 268, 276-77 (2001) citing Oneal v. Ferguson Constr. Co., 237 F.3d 1248, 1259 (C.A. 10 2001). See, e.g., Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (C.A.7 1992) (4-month period insufficient). Here, taking Holloway's claims as true, a complaint of race discrimination was made once a month for the three months preceding his termination. Accordingly, there is temporal proximity which satisfies the *prima facie* causation element.

Having established a *prima facie* case of retaliation, we now look to P&G who bears the burden of "articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action."

---

[4] The Fifth Circuit has "repeatedly held that the requirement of showing but-for causation applies in the final pretext stage, rather than the *prima facie* stage." Williams v. BRFHH Shreveport, LLC., 801 F.App'x 921, 924-26 (5th Cir. 2020) (citing Garcia v. Professional Contract Services, Inc., 938 F.3d 236, 243 (5th Cir. 2019)).

8

Shahrashoob v. Texas A&M Univ., 125 F.4th 641, 652-53 (5th Cir. 2025). The employer's burden is one of production, not persuasion; thus, the employee must show the reason advanced by the employer is a pretext for retaliation. Id. "A plaintiff fails to establish pretext when there is not significant record evidence beyond temporal proximity." Id. at 654.

Again, P&G has articulated a legitimate, non-retaliatory reason for terminating Holloway: he failed to follow SAFE purchasing policies after having been previously disciplined, and he misused his corporate credit card. Thus, the burden shifts to Holloway to show pretext.

A plaintiff may show pretext through temporal proximity plus significant record evidence. Id., citing Garcia v. Pro. Cont. Servs., Inc., 938 F.3d 236, 244 (5th Cir. 2019). Holloway does not provide "significant record evidence" to bolster his temporal proximity claim. He argues that he had an exemplary employment record and was not "the recipient of any form of disciplinary action prior to his protected activity which occurred in early September 2022. However, he received a Level 1 Corrective Action in November 2020 for conduct akin to that for which he was terminated. Additionally, he claims the proffered reasons for the termination were fabricated; yet, as discussed, Holloway admits that he misused the corporate credit card, and his self-serving reading of a corporate policy are insufficient to carry his burden of establishing pretext.

Because Holloway has failed to provide evidence showing P&G's proffered reasons for termination were a pretext for retaliation, this claim will be dismissed.[5]

Whistleblower Violation

In addition to his Title VII claims, Holloway asserts a claim pursuant to Louisiana's whistleblower statute, Revised Statute 23:967(a), which "provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices." Clark v.

---

[5] Holloway loosely asserts that he was retaliated against for filing a whistleblower claim, but such conduct is not considered a protected activity under Title VII. Therefore, the contention lacks merit and warrants no discussion.

City of Alexandria, 116 F.4th 472, 485 (5th Cir. 2024) (quoting Hale v. Touro Infirmary, 886 So.2d 1210, 1214 (La. App 4 Cir. 2004). "To succeed on such a claim, the plaintiff[] must establish that (1) the employer 'violated the law through a prohibited workplace act or practice,' (2) the plaintiff advised the employer of the violation; (3) the plaintiff 'then refused to participate in the prohibited practice or threatened to disclose the practice;' and (4) the employer fired the plaintiff because of his 'refusal to participate in the unlawful practice or threat to disclose the practice." Id. (quoting Hale, 866 So.2d at 1216.

Under this statute, a plaintiff must prove an actual violation of state law. Accardo v. La. Health Servs. & Indent. Co., 934 So.2d 381, 383-84; Puig v. Greater New Orleans Expressway Comm'n, 772 So.2d 842, 845 (La. Ct. App 5 Cir. 2000); Hale, 866 So.2d at 1214. Yet Holloway only generally references a federal regulation, 49 C.F.R. 172, Subpart H which pertains to training someone how to transport hazardous materials and Louisiana statutes, La. R.S. 14:133 and 38:3082, which prohibit the filing or maintaining of false public records and the falsification of documents to evade regulations, respectively. At no point in his pleadings, deposition, nor opposition to the instant motion for summary judgment does he point to a law that prohibited Bridget Anders from signing transportation documents. Nor does he present any documents evidencing the violations. He avers that because he was the one to load waste that he should sign the documents, but he fails to point any regulation proscribing such conduct. Holloway cannot prove his whistleblower claim, so it will be dismissed.

Defamation

Holloway's final claim is for defamation of character. Holloway argues that Tye Lachney, a Process Department Field Operator, publicly stated Holloway was terminated "for taking kickbacks and theft with contractors." (Doc. 16, p.4). "Defamation is a [state law] tort which

involves the invasion of a person's interest in his or her reputation and good name." Costello v. Hardy, 864 So.2d 129, 139 (La.2004) (citing Fitzgerald v. Tucker, 737 So.2d 706, 715 (La.1999); Trentecosta v. Beck, 703 So.2d 552, 559 (1997); Sassone v. Elder, 626 So.2d 345, 350 (La.1993)). To establish such a claim, a plaintiff must show: (1) a false and defamatory statement concerning another (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Kennedy v. Sheriff of East Baton Rouge, 935 So.2d 669 (La. 2006) (citations omitted). "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory *per se*." Costello, 864 So.2d at 140; Kennedy, 935 So.2d at 675. "When a plaintiff proves publication of words that are defamatory *per se*, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. The element of injury may also be presumed." Costello, 864 So.2d at 140-41 (internal citations omitted).

P&G argues that it did not publicize a false statement regarding Holloway's termination, employee of P&G, he does not hold a supervisory role. Under Louisiana law, an employee acts within the course and scope of his or her employment if his or her conduct (1) was primarily employment rooted; (2) was reasonably incidental to the performance of employment duties; (3) occurred on the employment premises; and (4) occurred during working hours. Baumeister v. Plunkett, 673 So.2d 994, 996-97 (La.1996). The only evidence submitted by Holloway in support of this claim is the declaration of Trent Catteruccia in which he states that in December 2022 or January 2023 he was "in a public meeting" and he heard Tye Lachney make a statement in front of "many other people" that Holloway was "terminated for taking kickbacks and theft with other contractors." (Doc. 26-4). This statement does not carry Holloway's burden of establishing a

11

defamation claim against P&G. There is no evidence that the statement was employment rooted, was reasonably incidental to the performance of work duties, that the meeting occurred on P&G premises nor that it was made during working hours. Therefore, this claim will be dismissed.

### IV.    Conclusion

For the reasons set forth above, P&G's motion for summary judgment will be granted and the claims for race discrimination, retaliation, violation of the Louisiana whistleblower statute, and defamation will be dismissed with prejudice. The court will issue a judgment in conformity with these findings.

THUS DONE AND SIGNED this 27th day of August 2025, at Alexandria, Louisiana.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT